# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| CHEYENNE GORDON<br>129 Halsted Street, Apt. 301<br>East Orange, NJ 07018 | : : : : | CIVIL ACTION |
| Plaintiff, | : : | No. _____ |
| v. | : : | |
| OSL RETAIL SERVICES CORP.<br>923 Haddonfield Road<br>Cherry Hill, NJ 08002 | : : : : | **JURY TRIAL DEMANDED** |
| Defendant. | : : : | |

## CIVIL ACTION COMPLAINT

Plaintiff, Cheyenne Gordon, (hereinafter referred to as "Plaintiff"), by and through her undersigned counsel, hereby avers as follows:

### I. Introduction

1. Plaintiff has initiated this action against OSL Retail Service Corp. (hereinafter referred to as "Defendant") for violations of the New Jersey Law against Discrimination ("NJ LAD" - N.J.S.A. §§ 10:5-1 *et. seq.*) and 42 U.S.C § 1981. Plaintiff asserts she was unlawfully terminated by Defendant. As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

### II. Jurisdiction and Venue

2. This Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this State and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice,

satisfying the standard set forth by the United States Supreme Court in <u>International Shoe Co. v. Washington</u>, 326 U.S. 310 (1945) and its progeny.

3. This action is initiated pursuant to 42 U.S.C. § 1981. The United States District Court for the District of New Jersey has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims arise under laws of the United States. This Court has supplemental jurisdiction over Plaintiff's state-law claim(s) because such claim(s) arise out of the same common nucleus of operative facts as his federal claims asserted herein. There would alternatively lie jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity, and Plaintiff is seeking in excess of $75,000.00 (exclusive of costs and interest).

4. Venue is properly laid in this District pursuant to 28 U.S.C. sections 1391(b)(1) and (b)(2), because Defendant conducts business in this judicial district and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

### III. Parties

5. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

6. Plaintiff is an adult with an address as set forth above.

7. OSL Retail Services Corp. ("Defendant") operates as a foreign entity in New Jersey. Defendant is neither headquartered, nor incorporated in New Jersey. Defendant is incorporated as a domestic profit corporation in Michigan. And Defendant publicly holds itself out as being headquartered at 5090 Orbitor Drive, Unit 1, Mississauga, ON L4W 5B5 (as Defendant is a Canadian-based company).

8. Defendant operates as a third-party (sales solution agency) to major retail companies and chains throughout the United States and Canada. It provides various services within such entities. For example (and relevant to the instant case), Defendant manages over 1,500 Walmart Wireless locations across North America and is the exclusive wireless sales and service provider for most Walmart locations. Defendant's connection to Walmart is used as an example herein because Plaintiff was to work within Walmart for Defendant (if not terminated upon hire, as explained *infra*).

9. At all times relevant herein, Defendant acted by and through its agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for the benefit of Defendant.

### IV.     Factual Background

10. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11. Plaintiff is a black (African-American) female.

12. Plaintiff was hired by Defendant effective on or about November 2, 2022; and in total, Plaintiff worked for Defendant for less than 1 week.

13. Plaintiff was hired by Defendant to work as a Sales Manager.

14. For a period of time, Plaintiff was supposed to train for the role of Sales Manager (an orientation and training process). With regard to her training, Plaintiff was physically placed at a Walmart Supercenter location in Linden, New Jersey (a selected site for her training).

15. Once Plaintiff completed training, she was going to be transferred (and assigned) to Defendant's location within Bayonne, New Jersey.

16. Plaintiff had been hired by Gina Calabrese, a District Manager of Defendant (in the New Jersey region in which Plaintiff was to work and train). Calabrese was the primary manager whom Plaintiff reported to, and Calabrese was a high-level manager overseeing numerous locations of Defendant.

17. On or about November 5, 2022, Plaintiff experienced racially discriminatory treatment. More specifically:

   a) Plaintiff was required to undergo training by a Training Manager. This Training Manager's name is upon information and belief (and post-termination research) Vanessa Osorio (as Plaintiff was unaware of her last name while employed);

   b) Osorio was not just training Plaintiff, she was also training and supervising a peer also being trained as a Sales Manager (Liliana – last name unknown);[1]  and

   c) In the presence of Plaintiff and even a customer, Liliana was repeatedly using the word "nigger" and "nigga." Plaintiff had personally heard such terms approximately 4 times in discussion(s).

18. Osorio, a Training Manager <u>required</u> to enforce *zero-tolerance policies*, never once stepped in, never told Liliana to stop with racially offensive language, nor in any way admonished Liliana. Instead, Osorio listened to every racist comment, nodded or acknowledged, and remained entirely silent during each racially-offensive statement (causing racial slurs to repeatedly be used).

19. Plaintiff had become extremely emotional, felt very offended, and told Osorio: (a) she needs to leave work for the balance of the day; (b) she cannot believe Osorio just let another manager repeatedly use the word "nigger" in front of her while staying silent, which was

---

[1] The names utilized in this Complaint (Gina Calabrese, Vanessa Osorio, and Liliana) are either spelled phonetically or their last names are presumed based upon online research following Plaintiff's termination.

extremely unprofessional for a Training Manager; and (c) that Plaintiff intended to escalate this issue.

20. Plaintiff was not able to just simply work in a different department or area of an enormous warehouse-like store of Walmart. Plaintiff could not keep her distance from Liliana, continually using overt racist slurs. Plaintiff was <u>not</u> an employee of Walmart. Plaintiff was instead an employee of Defendant (contracted with Walmart), which had (and operates) a <u>very small</u> designated area (similar to a kiosk setup in a mall) within Walmart. Osorio was taking no action and instead permitting an overt racist to <u>repeatedly</u> use racially offensive language.

21. As a result of the foregoing, Plaintiff professionally indicated she couldn't work the rest of the day. In addition to complaining to Osorio, Plaintiff immediately called Calabrese (Defendant's District Manager) upon exiting the Walmart (and her kiosk) area (on November 5, 2022) to address the discrimination and to seek a remedy.

22. On November 5, 2022, Plaintiff texted Calabrese explaining inter alia: she "left the store today because the trainer is extremely unprofessional with behaviors and terminology used" . . . "Words were used such as 'my nigga'" . . . I've been working in retail for many years and this was by far the worst experience" . . . "I believe an assessment needs to be done."

23. In response to Plaintiff complaining that she was experiencing racial discrimination, Calabrese did not offer to investigate or escalate the matter to human resources. She did not offer Plaintiff any other location or a new trainer. Instead, shocking a reasonable person's conscience, she merely said: "Hey sorry about that so I will offboard you and notate you resigned."

24. Shocked that Plaintiff was going to be treated as resigning for stepping out of a hostile work environment and complaining to her own district manager, Plaintiff responded to Calabrese via text: "There [is] no other trainer in the company?"

25. Plaintiff thought the solution to her discrimination complaint would be either discipline or termination of a racist, followed by being resumption of working at her location thereafter, <u>or</u> that she would merely be assigned a new trainer at a new location. After all, Walmart has over 70 stores in New Jersey alone (and more than 4,000 Walmarts nationwide).

26. When Plaintiff texted a request to be assigned to a new trainer (as Calabrese was not willing to engage in any discipline or investigation), Calabrese responded: "No, she is the multi-store trainer." Plaintiff again asked Calabrese: "Ok, so as a district manager you have no other solution besides offboarding me?" Offboarding Plaintiff was considering Plaintiff "terminated."

27. Calabrese responded to Plaintiff's second request for a "solution" stating Plaintiff was being treated as "resigned" for leaving her shift, exclaimed "what would you like me to do?" . . . "I have a whole new staff she is the training manager."

28. In a few follow-up text messages Plaintiff was just repeatedly told she was being considered "resigned." Exasperated that Plaintiff was being considered "resigned," "offboarded" and functionally terminated for stepping away from a racist environment to complain to her district manager and requesting a "solution," Plaintiff finally said "Ok – not going back and forth."

29. There is simply no question that Plaintiff was subjected to a hostile work environment on the day she complained, asked to keep working and for a solution, and was deemed terminated by Defendant for her inquiry and request for an investigation or assessment.

30. To Plaintiff's surprise in late November of 2022, she was texted by the same District Manager who terminated her (although having referred to Plaintiff as having resigned). Among other comments, Calabrese said she herself had been terminated from Defendant, apologized for what happened to Plaintiff and her own inaction(s), informed Plaintiff the racial language had been utilized with other staff too, and suggested Plaintiff get a lawyer offering to be Plaintiff's witness (as a result presumably of guilt in how she treated Plaintiff as terminated merely for seeking a remedy to discrimination).

## Count I
## Violations of 42 U.S.C. § 1981
**(Discrimination and Retaliation)**

31. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

32. Plaintiff was subjected to a hostile work environment by repeatedly hearing the word "nigga" and "nigger" on November 5, 2022.[2]

33. Plaintiff was then treated as terminated (or constructively discharged) complaining of discrimination and/or for asking for an investigation or solution. Plaintiff was treated as terminated on the same day in which she removed herself from the hostile work environment and sought redress.

34. Plaintiff was terminated (or constructively discharged) because of her race and/or complaints of racial discrimination.

35. These actions as aforesaid constitute violations of 42 U.S.C. § 1981.

---

[2] *See e.g. Castleberry v. STI Grp.*, 863 F.3d 259, 264 (3d Cir. 2017)(reversing district court's dismissal of case and explaining <u>a single, isolated instance</u> of using the word "nigger" in the workplace can be sufficient alone to constitute a "hostile work environment")

7

## Count II
## Violation of the New Jersey Law Against Discrimination (NJ LAD)
### (Discrimination and Retaliation)

36.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

37.     Plaintiff was subjected to a hostile work environment by repeatedly hearing the word "nigga" and "nigger" on November 5, 2022.[3]

38.     Plaintiff was then treated as terminated (or constructively discharged) complaining of discrimination and/or for asking for an investigation or solution. Plaintiff was treated as terminated on the same day in which she removed herself from the hostile work environment and sought redress.

39.     Plaintiff was terminated (or constructively discharged) because of her race and/or complaints of racial discrimination.

40.     These actions as aforesaid constitute violations of the NJ LAD.

**WHEREFORE**, Plaintiff prays that this Court enter an order providing that:

A.      Defendant is to be prohibited from continuing to maintain its illegal policy, practice, or custom(s) of discriminating or retaliating against employees, and is to be ordered to promulgate an effective policy against such discrimination/retaliation/interference and to adhere thereto;

B.      Defendants is to compensate Plaintiff, reimburse Plaintiff, reinstate Plaintiff where determined to be possible and/or feasible, and make Plaintiff whole for any and all pay

---

[3] *See e.g. Castleberry v. STI Grp.*, 863 F.3d 259, 264 (3d Cir. 2017)(reversing district court's dismissal of case and explaining a single, isolated instance of using the word "nigger" in the workplace can be sufficient alone to constitute a "hostile work environment")

and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay (absent reinstatement), salary, pay increases, bonuses, medical and other benefits, training, promotions, pension, and seniority. Plaintiff should be accorded those benefits illegally withheld from the date he first suffered the aforesaid unlawful actions at the hands of Defendant until the date of verdict;

    C.    Plaintiff is to be awarded punitive or liquidated damages as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct, and to deter Defendant or other employers from engaging in such misconduct in the future;

    D.    Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to damages for emotional distress and pain and suffering);

    E.    Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

    F.    Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law;

    G.    Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law.  Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

                                  Respectfully submitted,

                                  **KARPF, KARPF, & CERUTTI, P.C.**

                          By: _____

                                  Ari R. Karpf
                                  3331 Street Road
                                  Two Greenwood Square, Suite 128
                                  Bensalem, PA 19020
Dated: December 7, 2022            (215) 639-0801